1

2

3

4

5

6

7

8

11

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES WATERKEEPER, a
California non-profit association,

         Plaintiff,

    v.

CJI PROCESS SYSTEMS, INC.; a
California corporation; CJI PROCESS
SYSTEMS, INC. dba LEE RAY
SANDBLASTING AND COATING,

        Defendant.

Case No.: 2:24-cv-06406-DDP-BFM

**CONSENT DECREE**

1
<u>**CONSENT DECREE**</u>

2      **WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or

3 "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the

4 laws of the State of California, with its main office in Los Angeles, California;

5      **WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and

6 defense of the surface, ground, coastal and ocean waters of Los Angeles County from

7 all sources of pollution and degradation;

8      **WHEREAS,** Defendant CJI PROCESS SYSTEMS, INC. DBA LEE RAY

9 SANDBLASTING AND COATING ("Defendant") owns and operates two industrial

10 facilities located at 12000 Clark Street, Santa Fe Springs, CA 90670 ("CJI Facility")

11 and 12030 Clark Street, Santa Fe Springs, CA 90670 ("Lee Ray Facility")

12 (collectively, "Facilities") under Waste Discharger Identification numbers WDID 4

13 19I029469 and WDID 4 19I025294, respectively;

14      **WHEREAS,** the CJI Facility's industrial activities consist of manufacturing

15 metal and plastic tanks and related systems for plating, waste treatment and other

16 industrial activities. The Facility is categorized under Standard Industrial

17 Classification ("SIC") Code 3441, covering Fabricated Structural Metal;

18      **WHEREAS,** the Lee Ray Facility's industrial activities consist of sandblasting

19 and coating of tanks, tank systems, pumps and related equipment to customers in a

20 variety of industries. The Facility is categorized under Standard Industrial

21 Classification ("SIC") Code 3441, covering Fabricated Structural Metal and <u>SIC</u>

22 <u>3479</u>, covering coating, engraving, and allied services, not elsewhere classified.

23      **WHEREAS,** storm water discharges associated with industrial activity at the

24 Facility are regulated by the National Pollutant Discharge Elimination System

25 ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board],

26 Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ

27 and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method

28 Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3)

Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facilities ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, Defendant's operations at the Facilities result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

WHEREAS, on May 29, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S.

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

Department of Justice alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on July 30, 2024, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24-cv-06406-DDP-BFM ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the San Gabriel River, Alamitos Bay, San Pedro Bay, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings including if the Facilities are re-permitted under a single WDID as further agreed to by the Settling Parties following entry of this Consent Decree; **WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.  The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.  Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations are taking place is located within this District.

3.  The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.  LA Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term (as defined below) of this Consent Decree.

## I.      OBJECTIVES

6.      It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facilities.

## II.     AGENCY REVIEW AND DEFINITIONS

### A.      AGENCY REVIEW OF CONSENT DECREE

8.      <u>Agency Review.</u> Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with <u>40 C.F.R. § 135.5.</u> The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.     <u>Court Notice.</u> Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by <u>40 C.F.R. § 135.5,</u> in order to coordinate the Court's calendar with the 45-day review period.

10.     <u>Entry of Consent Decree.</u> Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.  DEFINITIONS**

11.     Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the General Permit, CWA, or in regulations or rules promulgated under the CWA have the meaning assigned to them in the General Permit, statutes, or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

    a.     "BAT" means the Best Available Technology Economically Achievable.

    b.     "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

    c.     "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

    d.     "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

    e.     "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

    f.     "Design Storm" means the design storm calculated in accordance with the design storm standards set forth in General Permit for

1   Volume-based BMPs (General Permit § X.H.6.a.) or Flow-based
2   BMPs (General Permit § X.H.6.b.).

3   g.   "Discharge Point" means each discharge location designated in
4        the then-current SWPPPs for the Facilities.

5   h.   "Effective Date" means the effective date of this Consent Decree,
6        which shall be the date of full execution by the Parties.

7   i.   "Entry Date" means the day this Consent Decree is approved and
8        entered by the Court.

9   j.   "Forecasted Rain Event" means a forecasted rain event as
10       determined by the National Oceanic and Atmospheric
11       Administration (http://forecast.weather.gov/) for "Santa Fe
12       Springs, CA, USA"[2].

13  k.   "MIP" means a Monitoring Implementation Plan.

14  l.   "PPT" means Pollution Prevention Team.

15  m.   "Qualified Industrial Storm Water Practitioner" or "QISP" shall
16       have the definition set forth in Section IX.A.1 of the General
17       Permit.

18  n.   "Qualifying Storm Event" or "QSE" shall have the definition set
19       forth in Section XI.B.1 of the General Permit.

20  o.   "Reporting Year" means the period from July 1 of a given
21       calendar year to June 30 of the following calendar year.

22  p.   "SMARTS" means the California State Water Resources Control
23       Board's Stormwater Multiple Application and Report Tracking
24       System.

25  q.   "SWPPP" means a Storm Water Pollution Prevention Plan.

26

27

28

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=33.9462&lon=-118.0863.

6

r.   "Term" means the period between the Effective Date and the "Termination Date."

s.   "Termination Date" means the latest of:

    i.   June 30 following three (3) years from the Effective Date;

    ii.   June 30 following two (2) years after an advanced treatment system is fully installed, operational, and optimized, if ever;

    iii.   seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the later of the dates in Paragraphs 11.r.i and 11.r.ii above; or

    iv.   seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

t.   "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III.  COMMITMENTS OF THE SETTLING PARTIES

### A.  STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.  <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.  <u>Current and Additional Best Management Practices.</u> At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit.

14.  <u>Rain Gauge/Sensor.</u> Defendant shall install and maintain an electronic rain gauge or sensor at the Facilities within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain

event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree. Should a difference arise between rainfall totals reported by National Oceanic and Atmospheric Administration at the Santa Fe Springs, California weather station and those reported by the Facility using the onsite rain gauge/sensor, the Facility gauge/sensor data will prevail.

15.    Structural and Non-Structural BMPs for the Facilities. As soon as possible but no later than forty-five (45) days of the Effective Date, unless otherwise noted, Defendant shall develop and implement the following BMPs at the Facilities:

a.    Vacuum and seal areas of degraded pavement or asphalt throughout the Facilities;

b.    Implement a sweeping program on all paved areas at least once per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

c.    Employ and secure new wattles/filters/filtration socks (biochar or other equivalent media) to remove sediments, metals, and organic materials in storm water discharged from the Facilities, and configure such wattles/filters/socks to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations.[3] Defendant shall, thereafter, employ and secure new wattles/filters/socks in the same manner

_____

[3] Implementation of new wattles/filters/filtration socks annually shall include socks placed on the Lee Ray Facility roof in locations to achieve maximum contact with storm water prior to discharging via downspouts.

annually prior to the start of the Wet Season, no later than September 15th;

d.   During the Wet Season, as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

e.   Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect all wattles/filters/socks deployed at the Facility;

f.   During the Wet Season, within twenty-four (24) hours prior to a Forecasted Rain Event, store industrial materials, including without limitation those stored outside and where roof protection is inadequate, under either (1) storm resistant shelters as defined by the General Permit or (2) tarps and cover all exposed waste material, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, or otherwise move them into a fully covered structure adequate to prevent exposure to rainfall;

g.   Remove, and prevent the storage of, all unused, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from the entire footprint of the Facilities;

h.   Add an industrial storm water sampling point at the downspout prior to the curb outlet for analysis of industrial storm water discharging from the roof of the Lee Ray Facility;

i.   Institute an equipment and vehicle maintenance program that ensures:

i.   no maintenance activities occur outdoors during wet
     weather, unless such maintenance is required for safe
     operation of the Facilities, *e.g.*, the forklift breaks down in a
     location that prevents ingress/egress;

ii.  maintenance activities occur only in designated work areas
     or beneath covered maintenance areas; and

iii. when maintenance activities must be performed outdoors,
     action shall be taken to immediately contain, capture, and
     clean up any discharge or spills of waste fluids to the
     ground; and.

j.   Within fifteen (15) days of each of the BMPs in Paragraphs 15.a,
     15.c, and 15.g above being initially implemented, Defendant shall
     confirm to LA Waterkeeper in writing, with representative
     photographs, that such BMP has been implemented as set forth
     above.

**B.    SAMPLING AT THE FACILITIES**

16.    Defendant shall develop a monitoring program consistent with the
General Permit. During the Term, for each reporting year, Defendant shall collect
samples of storm water discharge from each Discharge Point at the Facilities from at
least four (4) Qualifying Storm Events, including, at minimum, the first two (2)
Qualifying Storm Event during the first half of the Reporting Year and the first two
(2) Qualifying Storm Event during the second half of the Reporting Year. Such
sampling shall take place as soon as possible within the four (4) hour period required
by the General Permit § XI.B.5. In no event shall sample collection be deemed a
requirement of this Consent Decree if sampling conditions are unsafe. If Defendant
would have been required to collect samples during a rain event pursuant to this
Consent Decree had such rain event produced a discharge, but Defendant did not
collect samples because such rain event did not produce a discharge, then Defendant

1   shall document the inability to sample by taking photographs during the rain event of

2   each Discharge Point from which no discharge occurred. Defendant shall submit such

3   photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the

4   date of such rain event, within ten (10) days of a written request for such records by

5   LA Waterkeeper.

6        17.   Sampling Parameters. All samples collected pursuant to this Consent

7   Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should

8   Defendant intend to conduct sampling for any additional parameters that are listed in

9   40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without

10  limitation as a result of changed operations, a revised pollutant source assessment, or

11  a new mandate from a regulatory agency, such parameter shall be incorporated into

12  this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan

13  requirements (as defined below). Defendant shall immediately notify LA

14  Waterkeeper of its intent to conduct sampling for any such additional parameters and

15  the Parties shall meet and confer regarding the applicable Table 1 level for such

16  purposes within ten (10) days of such notification.

17       18.   Laboratory and Holding Time. Except for pH samples, Defendant shall

18  deliver all samples to a California-certified environmental laboratory for analysis

19  within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be

20  completed onsite using a portable instrument that is calibrated and used according to

21  the manufacturer's instructions.

22       19.   Detection Limit. Defendant shall request that the laboratory use

23  analytical methods adequate to detect the individual pollutants at or below the levels

24  specified in the General Permit and Table 1 below.

25       20.   Reporting. Defendant shall provide complete laboratory results of all

26  samples collected at the Facilities to SMARTS in accordance with the General

27  Permit, and shall provide copies to LA Waterkeeper within ten (10) days of receiving

28  the laboratory report with the results.

## C.    REDUCTION OF POLLUTANTS IN DISCHARGES

21.    <u>Table 1 Numeric Level.</u> Defendant shall develop and implement BMPs for storm water discharges from the Facilities that reduce pollutant concentrations to levels below those in Table 1.

### TABLE 1[4]

| Parameter | Numeric Level | Source of Level |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous) 100 mg/L (annual) | NAL |
| Iron | 1 mg/L (annual) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous) 15 mg/L (annual) | NAL |
| Zinc | 0.26 mg/L (annual) | NAL |
| Aluminum | 0.75 mg/L (annual) | NAL |
| Nitrate + Nitrite Nitrogen (N+N) | 0.68 mg/L (annual) | NAL |
| pH | 6-9 s.u. (instantaneous) | NAL |

22.    <u>Table 1 Exceedances.</u> Under this Consent Decree, an "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples from a given Facility within a Reporting Year exceeds the applicable annual level in Table 1;[5] or where the concentration of any pollutant in any

---

[4] The numeric levels listed in Table 1 are for reference only, and the Table 1 level applicable to each parameter shall be the then-effective level provided by the applicable source (the Industrial General Permit), e.g., if the NAL for zinc is either increased to 0.3 mg/L or decreased to 0.20 mg/L, such new NAL, and not 0.26 mg/L, shall be used as the Table 1 level for the purposes of this Consent Decree as if set forth herein. If the source of a level in Table 1 is revised to no longer provide a level for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 level for such parameter for the purposes of this Consent Decree.

[5] As examples: (i) samples from both Sample Point 1 and Sample Point 2 exceeding the 0.26 mg/L level for zinc on December 28, 2024; (ii) samples from Sample Point 1 exceeding the 0.26 mg/L level for zinc on December 28, 2024 and on March 15, 2025; or (iii) a sample from Sample Point 1 exceeding the 0.26 mg/L level for zinc on December 28, 2024, and a sample from Sample Point 2 exceeding the 0.26 mg/L level for zinc on March 15, 2025.

1    one (1) storm water sample from a given Facility exceeds the applicable

2    instantaneous level in Table 1.

3        23.    Action Plan. As of the Effective Date, and for the remainder of the

4    Term, if (a) Defendant has an unauthorized non-storm water discharge in violation of

5    Paragraph 12, or (b) storm water samples demonstrate an Exceedance as defined

6    above for either the CJI Facility or the Lee Ray Facility, or (c) after an advanced

7    treatment system is fully installed, operational, and optimized, if ever, the advanced

8    treatment system discharges untreated storm water in smaller than a Design Storm,

9    Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or

10   eliminating the relevant discharge of pollutants at the applicable Facility, and/or

11   achieving compliance with the non-storm water discharge prohibition ("Action

12   Plan")[6]. The complete Action Plan shall be submitted to LA Waterkeeper within

13   thirty (30) days of (a) the unauthorized non-storm water discharge, or (b) the receipt

14   of the laboratory report(s) demonstrating the Exceedance, as applicable. However, an

15   Action Plan shall not be required when the BMPs for the applicable unauthorized

16   non-storm water discharge or the Exceedance for the same pollutant in the same

17   drainage area were addressed in a previous Action Plan in the same Reporting Year

18   and such BMPs were not yet implemented as of the date of the applicable

19   unauthorized non-storm water discharge or QSE sampling that led to the

20   Exceedance.[7] If an Action Plan is required for both Facilities, Defendant may submit

21   one Action Plan that addresses both Facilities. In no event shall an Action Plan be

22   required for the 2024-2025 Reporting Year.

23

24   _____

25   [6] The "Action Plan" discussed in this Consent Decree is a separate and distinct requirement from
     any "Action Plan" or Exceedance Response Actions discussed in the General Permit.
26   [7] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable
     Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous
27   Action Plan in the same Reporting Year; and/or (2) when the applicable Exceedance is
     demonstrated for the same pollutant in the same drainage area as in a previous Action Plan in the
28   same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the
     applicable QSE that led to the Exceedance was sampled.

13

a.  <u>Action Plan Requirements.</u> Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric level(s) and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the source of each pollutant exceedance and/or applicable unauthorized non-storm water discharge; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric level(s) and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs, if applicable; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within ten (10) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b.  <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facilities' storm water discharges:

   i.   <u>Hydrologic Controls.</u> Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.   <u>Sweeping.</u> The upgrade to a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 μm) particles, and/or the increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii.   <u>Treatment Systems.</u> Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

iv.   <u>Evaluation of Existing BMPs.</u>  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.   <u>Action Plan Review.</u> LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. In the event LA Waterkeeper fails to provide Defendant with comments thirty (30) days after LA Waterkeeper's receipt of Defendant's Action Plan, it shall be deemed that LA Waterkeeper has waived its right to provide comments. Within thirty (30) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this

Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.    Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 28.b.i below.

e.    Action Plan Payments. Defendant shall pay Three Thousand Dollars ($3,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree. In no event shall more than two (2) Action Plan payments be required in a single Reporting Year.

**D.    VISUAL OBSERVATIONS**

24.    Storm Water Discharge Observations. During the Term, appropriately trained staff or designated consultant of Defendant shall conduct visual observations during the Facilities' operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

25.    Monthly Visual Observations. During the Term, appropriately trained staff or designated consultant of Defendant shall conduct monthly non-storm water visual observations of the Facilities. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such observations shall

include Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other identified potential sources of industrial pollutants at the Facility. All Discharge Points shall also be inspected for accumulation of dust, sediment, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facilities. During the Wet Season, such inspections shall further include observations of all identified storm water BMPs that are used only during the Wet Season at the Facilities to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in reducing or preventing pollutants in industrial storm water discharges and authorized non-storm water discharges at the Facilities. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facilities.

26.     <u>Visual Observations Records.</u> Defendant shall maintain observation records, including photographs, to document compliance with Paragraphs 24 and 25. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in an proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Defendant shall provide LA Waterkeeper with a copy of those records within ten (10) days of receipt of a written request from LA Waterkeeper for those records.

27.     <u>Employee Training Programs.</u> Within thirty (30) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facilities designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated

Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

    a.   <u>Materials.</u> Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facilities;

    b.   <u>Language.</u> The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

    c.   <u>Training Frequency.</u> Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facilities' SWPPPs. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

    d.   <u>Sampling Training.</u> Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

    e.   <u>Visual Observation Training.</u> Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.   Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facilities on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.   Employees. All Designated Employees at the Facilities shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.   Records. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within ten (10) days of receipt of a written request.

28.   SWPPP Revisions.

a.   Initial SWPPP Revisions. Defendant shall amend the Facilities' SWPPPs to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPPs shall contain, at a minimum, the following elements:

i.   A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facilities' storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

    ii.    A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facilities as required by section X.G of the General Permit;

    iii.    Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

    iv.    A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree;

    v.    A MIP as required by sections XI and X.I of the General Permit;

    vi.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

    vii.    A Training Program as described above in Paragraph 27.

b.    <u>Additional SWPPP Revisions.</u>

    i.    Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

    ii.    Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision

(including but not limited to, changes in Facilities contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.    Review of SWPPP.  For any SWPPP updates pursuant to Paragraphs 28a. and 28.b., LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**E.    COMPLIANCE MONITORING AND REPORTING**

29.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit.. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least forty-eight (48) hours' notice prior to a Site Inspection in anticipation of dry weather and at least twenty-four (24) hours' notice prior to a Site

Inspection in anticipation of wet weather. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facilities in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 58. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facilities' designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

    30.   <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

        a.    Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 58, on all industrial storm water compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facilities that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

        b.    Within ten (10) days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 58, any industrial storm water compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facilities received by Defendant from the Regional Board, the

1    State Board, and/or any state or local agency, county,

2    municipality.

3        31.    <u>Compliance Monitoring.</u> Defendant shall partially defray costs

4    associated with Plaintiff's monitoring of Defendant's compliance with this Consent

5    Decree during the Term by paying Ten Thousand Dollars ($10,000.00) within thirty

6    (30) days of the Entry Date.  Payments pursuant to this Paragraph shall be made via

7    check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt

8    requested to Los Angeles Waterkeeper, c/o Erina Kwon, 360 E 2nd Street Suite 250,

9    Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph

10    will constitute breach of the Consent Decree.

11        **F.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND**

12    **COSTS, MISSED DEADLINES, AND INTEREST**

13        32.    <u>Environmentally Beneficial Project.</u> To fund environmentally beneficial

14    project activities that will reduce or mitigate the impacts of storm water pollution

15    from industrial activities occurring in the San Gabriel River Watershed, Defendant

16    shall make a payment totaling  Thirty-Five Thousand Dollars ($35,000.00) to the

17    Rose Foundation made within thirty (30) days of the Entry Date, payable to the Rose

18    Foundation for Communities and the Environment and sent via overnight mail to

19    Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit

20    payment as required under this Paragraph will constitute breach of the Consent

21    Decree.

22        33.    <u>LA Waterkeeper's Fees and Costs.</u> Defendant shall pay a total of  Fifty-

23    Seven Thousand Five Hundred Dollars ($57,500.00) to LA Waterkeeper to partially

24    reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and

25    costs, reasonable attorneys' fees, and other costs incurred as a result of investigating

26    and filing the lawsuit, and negotiating a resolution of this matter within thirty (30)

27    days of the Entry Date. The payment shall be made payable to: AQUA TERRA

28    AERIS LAW GROUP and delivered by overnight carrier to 8 Rio Vista Ave.,

Oakland, CA 94611. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34. <u>Missed Deadlines.</u> In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, LA Waterkeeper shall provide written notice to Defendant of such missed deadline. Defendant shall have ten (10) days from receipt of such notice to cure such delinquency. If Defendant fails to cure such delinquency within ten (10) days of receipt of LA Waterkeeper's notice, then Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per business day thereafter. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within thirty (30) days after the resolution of the event that precipitated the stipulated payment liability.

35. <u>Interest on Late Payments.</u> Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

CONSENT DECREE

**IV.  DISPUTE RESOLUTION**

36.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

37.    <u>Meet and Confer.</u> Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

38.    <u>Settlement Conference.</u> If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 37, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

39.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C. § 1365(d)</u>, and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

**V.  MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

40.    <u>Plaintiff's Waiver and Release of Defendant.</u> In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims

that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.  Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.  Upon the Termination Date of this Consent Decree, Defendant may elect to notify LA Waterkeeper in writing regarding its completion of all obligations spanning the duration of the Term imposed by the Consent Decree herein. Upon receipt of this written notice, LA Waterkeeper will have fifteen (15) days to confirm in writing to Defendant that the Term of the Consent Decree has been completed. In the event LA Waterkeeper fails to provide Defendant in writing fifteen (15) days after LA Waterkeeper's receipt of Defendant's notice, it shall be deemed that the Term of the Consent Decree has been completed.

43.  Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facilities with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.  MISCELLANEOUS PROVISIONS

44.  No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.

Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

45. <u>Counterparts.</u> This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

46. <u>Authority.</u> The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

47. <u>Construction.</u> The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

48. <u>Full Settlement.</u> This Consent Decree constitutes a full and final settlement of this matter.

49. <u>Integration Clause.</u> This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

50. <u>Severability.</u> In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51. <u>Choice of Law.</u> The laws of the United States shall govern this Consent Decree.

52.   <u>Diligence.</u> Defendant shall diligently file and pursue all required permit applications for any BMPs required in this Consent Decree and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines herein.

53.   <u>Effect of Consent Decree.</u> Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

54.   <u>Negotiated Settlement.</u> The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

55.   <u>Modification of the Consent Decree.</u> This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least ten (10) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

56.   <u>Assignment.</u> Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

57.   <u>Force Majeure.</u> Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism,

1  sabotage, or terrorism; restraint by court order or public authority or agency; or action

2  or non-action by, or inability to obtain the necessary authorizations or approvals from

3  any governmental agency. A Force Majeure event shall not include normal inclement

4  weather, economic hardship, inability to pay, or employee negligence. Any Party

5  seeking to rely upon this Paragraph to excuse or postpone performance shall have the

6  burden of establishing that it could not reasonably have been expected to avoid the

7  Force Majeure event and which by exercise of due diligence has been unable to

8  overcome the failure of performance. The Parties shall exercise due diligence to

9  resolve and remove any Force Majeure event.

10      58.    _Correspondence._ All notices required herein or any other correspondence

11  pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail

12  transmission to the e-mail address listed below, or if electronic mail is not feasible,

13  then by certified U.S. mail with return receipt, or by hand delivery to the following

14  addresses:

15  If to Plaintiff:                          If to Defendant:
    Los Angeles Waterkeeper                  CJI Process Systems
16  Benjamin Harris                          Michelle Hansen
    Erina Kwon                               12000 Clark St.
17  Madeleine Siegel                         Santa Fe Springs, CA 90670
    360 E. 2nd St., Suite 250                Email:
18  Los Angeles, CA 90012                    michelle@cjiprocesssystems.com
19  Email: ben@lawaterkeeper.org
    Email: erina@lawaterkeeper.org
20  Email: madeleine@lawaterkeeper.org
21  Phone: (310) 394-6162

22

23  With copies to:                          With copies to:
    Anthony M. Barnes                        Christian E. Bredeson
24  Email: amb@atalawgroup.com               Ernie W. Chen
    8 Rio Vista Ave.                         10681 Foothill Boulevard, Suite 260
25  Oakland, CA 94611                        Rancho Cucamonga, CA 91730
    T: 917-371-8293                          Email: cbredeson@ccllp.law
26                                           Email: echen@ccllp.law
27

28

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

59.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

**APPROVED AS TO CONTENT**

Dated: _____April 28_____, 2025    By: _____
                                          Bruce Reznik
                                          Executive Director
                                          Los Angeles Waterkeeper

Dated: ___APRIL 30___, 2025    By: _____
                                          John Cholakian
                                          Chief Executive Officer
                                          CJI PROCESS SYSTEMS, INC.

1   **APPROVED AS TO FORM**

2
                                        AQUA TERRA AERIS LAW GROUP
3
            April 28
4   Dated: _____, 2025        By: _____
5                                            Anthony M. Barnes
                                             Attorney for Plaintiff
6                                            Los Angeles Waterkeeper

7

8                                       COLLINS + COLLINS LLP

9

10
            April 30
11  Dated: _____, 2025        By: _____
                                             Christian E. Bredeson
12                                           Ernie W. Chen
                                             Attorney for Defendant
13                                           CJI PROCESS SYSTEMS, INC.

14

15  **IT IS SO ORDERED.**

16  **FINAL JUDGMENT**

17      Upon approval and entry of this Consent Decree by the Court, this Consent

18  Decree shall constitute a final judgment between the Plaintiff and Defendant.

19

20

21  Dated:    June 23, 2025              CENTRAL DISTRICT OF CALIFORNIA

22

23                                      _____
                                        HON. DAVID O. CARTER
24                                      United States District Court Judge

25

26

27

28

31
CONSENT DECREE